AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Purple Apple iPhone, telephone number 619-496-2671
Seized as FP&F No. 2023250400096301 Item 0002
("Target Device")

)
)
)
)
)
)
)

Case No.   **23mj1956-JLB**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A, incorporated herein by reference

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 952 and 960 | Importation of a Controlled Substance |

The application is based on these facts:
See Affidavit of DEA Special Agent Erick Mendoza, which is hereby incorporated by refernce and made part herof.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Erick Mendoza, Drug Enforcement Administration
*Printed name and title*

Sworn to before me and signed in my presence.

Date:        06/01/2023

City and state:        San Diego, CA

_____
*Judge's signature*

Hon. Jill L. Burkhardt
*Printed name and title*

## AFFIDAVIT

I, Special Agent Erick Mendoza, being duly sworn, hereby state as follows:

### INTRODUCTION

1.    I make this affidavit in support of an application for a warrant to search the following electronic device:

> Purple Apple iPhone, telephone number 619-496-2671
> Seized as FP&F No. 2023250400096301 Item 0002
> **("Target Device")**

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952 and 960, Importation of a Controlled Substances, as further described in Attachment B. The requested warrant relates to the investigation and prosecution of RESENDIZ for importing approximately 7.1 kilograms of cocaine. The Target Device is currently stored as evidence at the Drug Enforcement Administration (DEA) San Diego Field Division (SDFD) located at 4560 Viewridge Avenue, San Diego, California 92123.

2.    The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation.  All dates and times described are approximate.

### BACKGROUND

3.    I am a Special Agent (SA) Criminal Investigator for the United States Drug Enforcement Administration (DEA), and I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code. I am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516. Further, I am a federal law enforcement officer within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure. I am authorized under Rule 41(a) to make applications for search and seizure warrants and to

1  serve arrest warrants. I am authorized to investigate violations of laws of the United States
2  and to execute warrants issued under the authority of the United States.

3      4.    I have worked in federal law enforcement since May 21, 2007. Prior to
4  working for the DEA, I was employed by the United States Border Patrol (USBP) for
5  fourteen (14) years. During my career with USBP, I was assigned to a number of details to
6  include Task Force Officer (TFO) with the DEA for two (2) years. I attended the United
7  States Border Patrol Academy where I received training in drug identification, criminal
8  law, and drug trafficking methods and tactics. During my time as a Border Patrol Agent I
9  participated in the identification and seizure of various narcotics interdictions.

10     5.    I have been a SA since May 2021. My training included a 16-week Basic
11 Agent course at the DEA Academy where I received training in surveillance techniques,
12 drug identification, law, confidential source management, methods and tactics of narcotics
13 trafficking and various aspects of conducting narcotics investigations.

14     6.    Upon graduation from the DEA Academy, I was assigned to San Diego Field
15 Division, where I currently am assigned to the San Diego Strike Force Group 3. Group 3
16 investigates U.S. and foreign based individuals and illegal Drug Trafficking Organizations
17 (DTOs), including those organizations whose operations involve the wholesale distribution
18 quantities of cocaine, methamphetamine, heroin, fentanyl, and marijuana.

19     7.    While with the DEA, I have participated in investigations involving federal
20 violations of Title 21. I have conducted surveillance on multiple narcotics transactions,
21 processed both drug and nondrug evidence, and been present during confidential source
22 (CS) meetings. Based on my training, experience, and information provided to me by other
23 agents from federal, state, and local law enforcement agencies, I am familiar with
24 investigations of DTOs, including identifying methods of importation and distribution of
25 controlled substances, and how controlled substances are manufactured, consumed,
26 packaged, marketed, smuggled, and distributed. I am also familiar with various tactics
27 used by DTOs to import drugs into the United States, communicate with members of the
28 DTOs, and arrange for transportation and distribution of drugs.

1      8.      I am aware that it is a common practice for narcotics traffickers to use multiple

2  cellular telephones, pagers, portable radios, tablets, computers and other electronic devices

3  containing photographs, ledgers messages, contacts, emails, documents, and other forms

4  of correspondence to maintain communications with co-conspirators in furtherance of

5  trafficking activity. Narcotics traffickers routinely switch between multiple cellular

6  telephones and digital devices in order to hinder law enforcement investigative efforts.

7  Traffickers also may subscribe to multiple carrier services for their various phones.

8  Generally, it is common to encounter narcotics traffickers in possession of multiple

9  devices, some of which are use at the same time. It is also common to find evidence in

10  phones not currently subscribed to cellular service. Narcotics traffickers sometimes switch

11  cellular devices but keep the old device that preserves the evidence.

12      9.      Based upon my training, experience, and consultations with law enforcement

13  officers experienced in narcotics trafficking investigations, and all the facts and opinions

14  set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s))

15  and other portable electronic devices (such as Laptops, iPads, Tablets, etc.) can and often

16  do contain electronic evidence, including, for example, phone logs and contacts, voice and

17  text communications, and data, such as emails, text messages, chats and chat logs from

18  various third-party applications, photographs, audio files, videos, and location data. This

19  information can be stored within disks, memory cards, deleted data, remnant data, slack

20  space, and temporary or permanent files contained on or in the cellular telephone.

21  Specifically, searches of cellular telephones and other portable electronic devices (such as

22  Laptops, iPads, Tablets, etc.) of individuals involved in the importation of narcotics may

23  yield evidence:

24      a.      tending to indicate efforts to possess with the intent to distribute

25  controlled substances within the United States;

26      b.      tending to identify accounts, facilities, storage devices, and/or

27  services—such as email addresses, IP addresses, and phone numbers—used to facilitate

28

3

1    the distribution of and/or the possession with the intent to distribute controlled substances

2    within the United States;

3          c.      tending to identify co-conspirators, criminal associates, or others

4    involved in the distribution of and/or the possession with intent to distribute of controlled

5    substances within the United States;

6          d.      tending to identify travel to or presence at locations involved in the

7    distribution of or possession with intent to distribute controlled substances within the

8    United States, such as stash houses, residences used to prepare or process controlled

9    substances, load houses, or delivery points;

10         e.      tending to identify the user of, or persons with control over or access

11    to, the Target Device; and/or

12         f.      tending to place in context, identify the creator or recipient of, or

13    establish the time of creation or receipt of communications, records, or data involved in the

14    activities described above.

15                   **FACTS SUPPORTING PROBABLE CAUSE**

16       10.      On April 18, 2023, Julio Francisco RESENDIZ-Zamora ("RESENDIZ"), a

17    Mexican National and a Lawful Permanent Resident (LPR) of the United States, entered

18    the United States from Mexico at the San Ysidro Port of Entry through vehicle lane

19    number 26. RESENDIZ was the registered owner and operator of a white 2018 GMC

20    Yukon XL ("the vehicle") bearing California license plates CA-8CGJ263. RESENDIZ

21    was accompanied by one adult female and four minor children.

22       11.      Customs and Border Protection Officer (CBPO) C. Rockward was working

23    the primary lanes and received a negative declaration from RESENDIZ. CBPO Rockward

24    queried RESENDIZ and the vehicle plate which yielded a computer-generated alert on

25    the vehicle plate requiring referral to secondary inspection.

26       12.      CBPO J. Heilbronner was working at the San Ysidro Port of Entry, East

27    Security Office, where RESENDIZ was brought for a pat down. During the pat down, it

28    was discovered RESENDIZ had six packages wrapped around his stomach and waist. A

1  narcotics detection canine inspected the packages. Canine FREDY displayed an alert to a
2  trained order. CBPO Truong notified the security office supervisor of Canine FREDY's
3  alert.

4       13.    CBPO Suarez was assigned the seizure of the six packages retrieved from
5  RESENDIZ in the Security Office. CBPO Suarez drove the vehicle RESENDIZ was
6  driving through the Z-portal with no anomalies, then drove the vehicle to the Secure
7  Contraband Coordinator parking lot. CBPO Suarez then retrieved the six packages from
8  the Security Office and took the packages to the Secure Contraband Coordination for
9  further testing assisted by CBPO Smith. The packages tested positive for Cocaine using
10  a Narcotics Test Kit – Scott Reagent System Modified. A total of approximately 7.10
11  kilograms of Cocaine was seized. CBPO Suarez placed RESENDIZ under arrest at about
12  2250 hours.

13       14.    CBPO Suarez contacted Sector and Homeland Security Investigations (HSI)
14  at about 2216 hours, Special Agent (SA) Paul Ellis responded, and SA Ellis thereafter
15  contacted Drug Enforcement Administration (DEA) SA Erick Mendoza. DEA SAs
16  Mendoza and Jorge Contreras arrived at the San Ysidro Port of Entry, and at approximately
17  0218 hours, April 19, 2023, SA Mendoza, as witness by SA Contreras, advised RESENDIZ
18  of his Miranda Rights. RESENDIZ indicated that he understood and agreed to speak
19  without the presence of a lawyer.

20       15. RESENDIZ admitted to smuggling drugs, claiming the Tijuana State Police have
21  been threatening him for the last two years making him smuggle narcotics from Mexico
22  into the United States. RESENDIZ stated this was his third time smuggling narcotics and
23  that he usually gets paid approximately $3,000.00 U.S. Dollars. RESENDIZ stated the
24  Tijuana State Police have also tasked him with delivering narcotics in and around San
25  Diego, California and that he usually gets paid approximately $1,000.00 U.S. Dollars for
26  those jobs.

27       16.    The Target Device was found in RESENDIZ's pocket at the time of arrest.
28  RESENDIZ was shown the phone and identified it as his. RESENDIZ stated he was

1 instructed to delete all cell phone messages between RESENDIZ and members of the
2 Tijuana State Police. A consensual short and preliminary review of RESENDIZ's phone
3 showed no information regarding narcotics transactions.

4      17.    Based upon my experience and training, consultation with other law
5 enforcement officers experienced in narcotics trafficking investigations, and all the facts
6 and opinions set forth in this affidavit, I believe that telephone numbers, contact names,
7 electronic mail (email) addresses, appointment dates, messages, pictures and other digital
8 information are stored in the memory of the Target Device. In light of the above facts and
9 my experience and training, there is probable cause to believe that Defendant was using
10 the Target Device to communicate with others to further the distribution of illicit narcotics
11 within the United States. Further, in my training and experience, narcotics traffickers may
12 be involved in the planning and coordination of a drug trafficking event in the days and
13 weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest
14 and will continue to attempt to communicate with a defendant after their arrest to
15 determine the whereabouts of the narcotics. Based on my training and experience, it is
16 also not unusual for individuals, such as Defendant, to attempt to minimize the amount of
17 time they were involved in their trafficking activities, and for the individuals to be
18 involved for weeks and months longer than they claim. Further, in this case, RESENDIZ
19 stated that he had been threatened to smuggle drugs for the past two years and this was his
20 third time smuggling narcotics across the border, in addition to delivering drugs in San
21 Diego. Accordingly, I request permission to search the Target Device for data beginning
22 on January 18, 2023, up to and including April 18, 2023.

23 **METHODOLOGY**

24      18.    It is not possible to determine, merely by knowing the cellular telephone's
25 make, model and serial number, the nature and types of services to which the device is
26 subscribed and the nature of the data stored on the device. Cellular devices today can be
27 simple cellular telephones and text message devices, can include cameras, can serve as
28 personal digital assistants and have functions such as calendars and full address books and

6

1 │ can be mini-computers allowing for electronic mail services, web services and rudimentary
2 │ word processing. An increasing number of cellular service providers now allow for their
3 │ subscribers to access their device over the internet and remotely destroy all of the data
4 │ contained on the device. For that reason, the device may only be powered in a secure
5 │ environment or, if possible, started in "flight mode," which disables access to the network.
6 │ Unlike typical computers, many cellular telephones do not have hard drives or hard drive
7 │ equivalents and store information in volatile memory within the device or in memory cards
8 │ inserted into the device. Current technology provides some solutions for acquiring some of
9 │ the data stored in some cellular telephone models using forensic hardware and software.
10 │ Even if some of the stored information on the device may be acquired forensically, not all
11 │ of the data subject to seizure may be so acquired. For devices that are not subject to forensic
12 │ data acquisition or that have potentially relevant data stored that is not subject to such
13 │ acquisition, the examiner must inspect the device manually and record the process and the
14 │ results using digital photography. This process is time and labor intensive and may take
15 │ weeks or longer.

16 │      19.    Following the issuance of this warrant, I will collect the Target Device and
17 │ subject it to analysis. All forensic analysis of the data contained within the Target Device
18 │ and memory card(s) will employ search protocols directed exclusively to the identification
19 │ and extraction of data within the scope of this warrant.

20 │      20.    Based on the foregoing, identifying and extracting data subject to seizure
21 │ pursuant to this warrant may require a range of data analysis techniques, including manual
22 │ review, and, consequently, may take weeks or months. The personnel conducting the
23 │ identification and extraction of data will complete the analysis within ninety (90) days of
24 │ the date the warrant is signed, absent further application to this court.

25 │ **PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

26 │      21.    Consent was granted by RESENDIZ to review the phone contents and a
27 │ cursory search was done by investigating agents at the time of arrest. This warrant is being
28 │ requested to obtain a more comprehensive copy of the data contained within the device that

1   was not obtained during the cursory search. I am asking the Court not to consider any

2   information from the prior search in determining whether there is probable cause.

3                               **CONCLUSION**

4          22.    Based on all of the facts and information described above, my training and

5   experience, and consultations with other law enforcement officers, I submit there is

6   probable cause to believe that a search of the Target Device will yield evidence of

7   Defendant's violations of Title 21, United States Code, Sections 952 and 960. Accordingly,

8   I request that the Court issue a warrant authorizing law enforcement to search the items

9   described in Attachment A, and seize the items listed in Attachment B using the above-

10  described methodology.

11         I swear the foregoing is true and correct to the best of my knowledge and belief.

12

13

14

15                                         Special Agent Erick Mendoza
                                           Drug Enforcement Administration

16

17         Sworn and attested to under oath by telephone, in accordance with Federal Rule of

18  Criminal Procedure 4.1, this 1st day of June, 2023.

19

20                                         HON. JILL L. BURKHARDT
                                           UNITED STATES MAGISTRATE JUDGE
21

22

23

24

25

26

27

28

                                            8

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

> Purple Apple iPhone, telephone number 619-496-2671
> Seized as FP&F No. 2023250400096301 Item 0002
> **("Target Device")**

The Target Device is currently in the possession of the Drug Enforcement Administration (DEA) located at 4560 Viewridge Avenue, San Diego, CA 92123

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below.  The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of January 18, 2023, up to and including April 18, 2023:

a.  tending to indicate efforts to import cocaine, or some other federally controlled substance, from Mexico into the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine, or some other federally controlled substance, from Mexico into the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine, or some other federally controlled substance, from Mexico into the United States;

d.  tending to identify travel to or presence at locations involved in the importation of cocaine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.